Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)



**FILED**

Jul 03 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ GloriaVocal          DEPUTY

Plaintiff *pro se*

## UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton A. Ewing, | Case No.: **'23CV1231 JAH DEB** |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>**1. 47 U.S.C. §227 (TCPA)**<br>**2. PC §637.2 / 632.7 (CIPA)** |
| ALLEVIATE TAX, LLC, and | |
| MATTHEW REED, an individual | |
| Defendants | |

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") files this Civil

Complaint ("Complaint") for money damages and injunctive relief, demanding a

trial by jury, against Defendant Matthew Reed, an individual (herein "REED") and

Defendant Alleviate Tax, LLC, a California corporation (herein "Alleviate Tax")

that is registered to do business in California with the Secretary of State, to stop

said defendants from violating the Telephone Consumer Protection Act and the

Telemarketing Sales Rule by sending telemarketing text messages and calling with

prerecorded artificial voice messages to Plaintiff's personal residential **cellular**

phone (ending in -9640), which is registered on www.donotcall.gov (the National

Do Not Call Registry) without permission and without consent of Plaintiff.

Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as

to himself and his own acts and experiences, including investigation conducted by

Plaintiff[1].  Plaintiff is suing to stop both Defendant's practice of sending text

messages and calls using an "automatic telephone dialing system" ("ATDS") to the

cellphones of consumers in San Diego county (including Plaintiff's -9640 cell

phone) without their prior express consent by obtaining an injunction prohibiting

violation of the TCPA (Title 47 United States Code); (2) stop both Defendant's

practice of sending repeated text messages to consumers on the National Do Not

Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting both

Defendant's continued illegal efforts to send text messages and make harassing

calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing

who was injured by both Defendant's conduct.

## PARTIES

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39),

   and a resident of San Diego, California at all times relevant to this action.

---

[1] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 2

23cv

Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[2].

2. Matthew Reed is an individual, and a "person" as defined by 47 USC §153(39).   Matthew Reed is also the licensed Enrolled Agent on the form 2848 that was emailed to Plaintiff.

3. Alleviate Tax, Inc is a "person" as defined by 47 USC §153(39) and is formed in the state of California.

4. Plaintiff has been repeatedly called and texted by ALLEVIATE TAX directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant Alleviate Tax's employees to stop all future calls and texts.

5. Defendant Alleviate Tax is a California corporation that conducts business throughout this District, in San Diego, California even though conduction such business is illegal and unauthorized under California state law.

_____

[2] For clarity, this number is not a hardwired landline.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 3

Defendant ALLEVIATE TAX is a "person" as defined by 47 USC §153(39) and is own, operated, controlled and managed solely by Mark Laughlin. Defendants are in the business of selling tax debt relief scams. Defendants use the wires of the United States to harass and annoy DNC registered telephone owners with their solicitation calls to sell sham loans to unsuspecting victims in California.

6. Defendant Alleviate Tax is located at 1231 E Dyer Road, Suite 165, Santa Ana, CA 92705. Plaintiff is only suing Matthew Reed, an individual and Alleviate Tax, Inc, a California corporation and no other persons or parties, named or unnamed, whether as Does or otherwise. The Defendant's attorneys should not be confused here. Plaintiff repeats himself again, there is only one (1) defendant that is a corporation and one (1) individual person named in this civil lawsuit and Plaintiff is specifically alleging that Defendant Alleviate Tax directly engaged in the illegal and offending conduct that is set forth in detail below.

7. The corporation named herein is a complete sham and the alter ego of Matthew Reed. REED is personally liable for the illegal acts and actions set forth in this complaint.

8. REED is hereby put on notice that Plaintiff will also move the Court to pierce the corporation defendant's veil and hold REED and his co-owners personally liable for the judgment in this matter.

9. Defendant Alleviate Tax called Plaintiff in direct violation of the TCPA, devoid of prior consent, in order to solicit Plaintiff to purchase Defendant Alleviate Tax's services. The violating calls are set forth in detail below, including the date, time, from what number and to which number. That is all that is required under the TCPA to state sufficient facts to support that these defendants actually called Plaintiff.

10. Often times, telemarketers will use a fake name and will spoof a fake phone number in order to evade TCPA lawsuits. That is exactly what Defendant Alleviate Tax has instructed, ordered and commanded its employees to do. After having filed, apparently, over eighty TCPA cases over the past 9 years, Plaintiff can make this assertion of fact based on a massive amount of experience regarding this fact.

11. "Reed[3]," as an employee of Defendant Alleviate Tax, is a legal agent of Defendant Alleviate Tax and his actions are the actions of Defendant

---

[3] Plaintiff does not know what Reed's preferred pronouns are at this time. Reed may use he, she, him, her, they, vis or any other pronoun. For simplicity, Reed will be referred to as "he" or "his" in this pleading.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 5

23cv

Alleviate Tax.  Corporations are legal entities and they are only able to act through their employees.  Otherwise, a corporation is just a peace of paper filed with the secretary of state.

**12.** *Hoffman v. Cenlar Agency, Inc.*, No. 12cv414 L (NLS), 2013 U.S. Dist. LEXIS 43860 (S.D. Cal. Mar. 27, 2013) is strictly, solely and only a land-line case[4] under PC §632 (in fact it was a call to a law firm and the secretary answered the office phone).  It is not a cellular phone case under PC §632**.7**.

**JURISDICTION AND VENUE**

13. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").  This is not a "diversity of citizenship" case.  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).  Federal law is allowed to be decided by federal judges.

14. This Court has personal jurisdiction over the Defendants since both Defendants conduct business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here.

---

[4] The Court is requested, pursuant to FRE 201, to take judicial notice of the indisputable fact that *Hoffman* is a land-line only case and not a cellular phone case and nowhere in that Complaint is PC §632.7 ever even mentioned.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 6

23cv

Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

15. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, without consent.  CIPA is only being applied, in this matter, to calls and not to text messages alleged herein.

16. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim." *Holley v. Crank*, 400 F.3d 667, 674 (9th Cir. 1989). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989).  *Brooks v. Alameida*, 446 F. Supp. 2d 1179, 1181 (S.D. Cal. 2006).

17. Defendant Alleviate Tax has purposefully directed its activities into California.  Area code 619 is entirely within San Diego County.

**INTRODUCTION**

18. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls.

The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).  Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.  Plaintiff has a good faith basis to file this lawsuit against these defendants.

19. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  Plaintiff has in fact registered his phone (-9640) on www.donotcall.gov and confirmed that registration.

20.  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 8

23cv

22. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

23. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

24. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

25. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com.  Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few.  This must stop.  The only way to stop violators is to sue them in a court of law having jurisdiction.

26. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that

23cv

making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

27. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[5]

28. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[6]

29. In recent years a troubling trend has surfaced in the merchant cash advance industry, cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

30. This merchant cash advance telemarketing trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls

---

[5] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[6] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 10

23cv

without their (or his) consent and in violation of the TCPA, in violation of CIPA.

31. The initial part of the call was a prerecorded voice, then Defendant Alleviate Tax's employee[7] "Reed" admitted to Plaintiff, at the end of the 6/26/2023 telemarketing call, when asked by Plaintiff, that Defendant Alleviate Tax does in fact record all of its solicitation calls. Reed transferred the call to a male person who attempted to justify the illegal act of recording by adding that they record for "training purposes" but that additional fact is not an excuse for violating CIPA and does not afford the requisite consent. Any and all calls into California phone numbers must disclose, at the beginning of the call, that said call is being recorded. Waiting until the very end of the call to admit, when asked, that it was recorded is too late. Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording does not occur at or near the beginning of said call. Cellular phones do not require confidential private information to be exchanged to be

_____

[7] This is not a 3rd party. Rather, an employee is the actor by which the corporation engages. The acts of an employee are the acts of the defendant corporation.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 11

23cv

protected by CIPA as clearly shown in PC §632.7. This is not a PC §632 land line case.

32. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

33. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

34. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

35. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47

C.F.R. §64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

36.  "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

37."'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

38.  The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

39.  In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

40.  If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

41.  Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 14

23cv

42. Defendant Alleviate Tax is a tax debt consulting firm, selling its services throughout San Diego County and is not licensed to do business in California.

43. Defendant Alleviate Tax has violated its own corporate charter from Colorado which authorizes only "lawful acts or activity."  Telemarketing is illegal and it is a criminal act.

44. Defendant Alleviate Tax which conducts business using various fictitious or even fake names, owns and operates the website, www.Tax ResolutionPlus.com.

45. Defendant Alleviate Tax conducts telemarketing campaigns to sell its services to consumers throughout southern California.  As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant Alleviate Tax   Plaintiff can assert and allege this detailed fact because Defendant's employee, Reed, expressly admitted it.

46. In placing unsolicited text messages to consumers, Defendant Alleviate Tax sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

47. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant Alleviate Tax to cease from violating

the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees).  The text messages were generic in nature and did not address Plaintiff by name.  The text message did not offer a way to opt out or to stop future solicitation texts.

48. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call.  Plaintiff was required to hit "1" to be transferred to a live operator.  This happened on each and every call that is the subject of this lawsuit.  Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used.  However, the Defendants fail to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant Alleviate Tax did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant Alleviate Tax.

49. Plaintiff and Defendants do not have a pre-existing business relationship.  Plaintiff has never been a customer or client of Defendant's loan business.

50. Specifically, the hardware and software used by Defendant Alleviate Tax has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 16

23cv

automated fashion without human intervention.  Defendant Alleviate Tax's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention.  The distinct bubble-popping sound and the long silent pause were, in Plaintiff's vast experience, the clear indication that an ATDS robo-dialer was used by Defendant Alleviate Tax for the calls.

51. The text messages were sent by Defendant Alleviate Tax with its knowledge and approval of the CEO of Defendant.  Defendant Alleviate Tax knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software.  The text messages were generic which indicates an ATDS was used by Defendant Alleviate Tax.

52. All of the text messages were sent via an ATDS at the direction and oversight of Defendant Alleviate Tax.  Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

53. Based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity

to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting at a later date.[8]  Plaintiff alleges that this is exactly what Defendant Alleviate Tax has done.

54. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of Defendant Alleviate Tax's employees, Reed, expressly admitted that they were using an "auto dialing computer[9]" to make the calls and send out the text messages in order to get California residents to buy their consulting programs.  The bubble popping sound at the beginning of the calls were a dead give-away that these defendants are using and employing an auto dialer (aka robo-dialer).

55. By sending unsolicited text messages as alleged herein, Defendant Alleviate Tax has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference

---

[8] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
[9] Or "auto dialing software" or words to that affect.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 18

with the use of his phone, consumption of battery life, loss of value realized

for monies he paid to his AT&T carrier for the receipt of such messages, and

the diminished use, enjoyment, value, and utility of his telephone plan.

Furthermore, Defendant Alleviate Tax sent the messages knowing they

trespassed against and interfered with Plaintiff's use and enjoyment of, and

the ability to access, his phone, including the related data, software, and

hardware components.

56. FCC regulations promulgated under the TCPA specifically prohibit

Defendant from using an artificial or prerecorded voice to call Plaintiff's

Number for the purpose of advertising or telemarketing absent Plaintiff's

prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[10]

**PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST**

**DEFENDANT ALLEVIATE TAX and REED**

57. Defendant Alleviate Tax and Defendant REED called or texted Plaintiff

Ewing, on his DNC registered personal cell phone, 619-719-9640, on the

following dates:

    a. December 30, 2022 from 657-439-5720 at 11:29 AM – Call –

---

[10] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

COMPLAINT    1. 47 U.S.C. §227 (TCPA)    2. PC §637.2 / 632.7 (CIPA) - 19

23cv

    b.  December 31, 2022 from 657-439-5720 at 11:19 AM – Call –

    c.  January 15, 2023 from 657-439-5720 at 9:56 AM - Call

    d.  January 16, 2023 from 657-439-5720 at 10:36 AM – Call

    e.  January 18, 2023 from 657-439-5720 at 2:24 PM – Call

    f.  February 20, 2023 from 619-658-1628 at 10:13 AM – Call

    g.  February 21, 2023 from 619-658-1628 at 8:34 AM - Call

    h.  February 27, 2023 from 619-658-1628 at 12:41 PM – Call –

    i.  March 13, 2023 from 619-658-1628 at 2:27 PM – Call

    j.  April 19, 2023 from 657-439-5720 at 3:48 PM - Call

    k.  April 20, 2023 from 619-658-1628 at 2:37 PM – Call

    l.  June 26, 2023 from 619-658-1628 at 2:34 PM— Call

    m. June 29, 2023 from 254-323-2307 at 10:03 AM – Call

58. The above dates, times, from what number and to what number is all the detail that is required under the TCPA.  Nothing else is necessary at the initial pleading stage.  *See* Rule 8 and Rule 10, FRCP.

59. There were, thus far, 13 calls (($1,500 + $1,500 +$5,000) times 13 = $104,000)) from Defendant Alleviate Tax.

60. Defendant Alleviate Tax's employee Reed admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any

input from him.  "Reed" stated that once a person hit's "1" then the software connects or transfers the call to either her or another telemarketer in the office.

61. For clarity purposes, REED is the person who is guiding, controlling, managing and orchestrating all of the Alleviate Tax corporate actions complained of herein.

62. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from Defendant Alleviate Tax.  Additionally, Plaintiff became upset on each telephone <u>call</u> making very clear that the caller must never telemarket him (Plaintiff) ever again.

63. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Do you owe the IRS more than $10,000 in back taxes?  Press five to be connected to one of our specialists*" or similar words to that affect.  The TCPA does not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

64. Defendant Alleviate Tax was calling to sell its tax debit relief services to Plaintiff who was in California at the time.

65. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls

or text messages.  Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued.

66. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only.  Notwithstanding, mixed use phones are still fully protected.

67. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant ALLEVIATE TAX's services.

68. The text messages were sent by Defendant Alleviate Tax.  The text messages were sent at Defendant Alleviate Tax's direction, command and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

69. Defendant Alleviate Tax expressly and overtly controlled the exact generic content of the text messages.

70. The text messages, unlike the emails, did not address Plaintiff by name.  Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

71. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

72.  Plaintiff Ewing never provided his phone number or his consent to Defendant Alleviate Tax to receive any solicitation from them.  Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant Alleviate Tax.

73.  The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

74.  Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR.  *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

75.  The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).  At one or more instance during these calls, Defendant Alleviate Tax utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

76. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

77. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

78. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant Alleviate Tax for any purpose whatsoever.  In addition, Plaintiff told Defendant Alleviate Tax at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant Alleviate Tax contacting him.  Accordingly, Defendant Alleviate Tax never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[11]

79. Plaintiff did not have a personal relationship with Defendant Alleviate Tax at any point in time.[12]

---

[11] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[12] 21-cv-01123

80. Defendant Alleviate Tax did not make the telephone solicitations in error.

81. When Plaintiff answered calls from Defendant Alleviate Tax, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

82. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

83. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

84. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

85. Plaintiff has never done business with Defendant or any of its employees.

86. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice.

That means the test of whether an ATDS was used is not relevant at this time.

87. Billions of illegal and harassing telemarketing calls are made to Americans each month. But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls. Organizations like Defendant Alleviate Tax need to be put out of business in order to stop this infection called telemarketing. Most Americans receive more spam texts and more telemarketing calls than they do communications from friends and family.

88. Defendant Alleviate Tax, through its employee Reed and other employees of Defendant, called Plaintiff to sell its loan products. The calls were not placed by an unknown third party. Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

89. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

90. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

91. Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship.  Further, Defendant Alleviate Tax continued to seriously and substantially harass and annoy Plaintiff after Defendant Alleviate Tax was expressly and explicitly told to cease and desist.

92. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant Alleviate Tax and Defendant REED)**

93. Plaintiff Ewing repeats and realleges paragraphs 1 through 92 of this Complaint and incorporates them by reference.

94. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone

23cv

number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

95. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

96. Defendant Alleviate Tax violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

97. Defendant Alleviate Tax violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant Alleviate Tax in violation of 47 C.F.R. § 64.1200, as described above.

23cv

98. Defendant Alleviate Tax failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

99. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

100.    Defendant Alleviate Tax used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

101.    By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant Alleviate Tax violated 47 U.S.C. § 227(b)(1)(A)(iii).

102.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

23cv

103.    Defendant ALLEVIATE TAX violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

104.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

105.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for

maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

106.     Here, Defendant Alleviate Tax sent Plaintiff Ewing multiple

unsolicited text messages after he had submitted valid "STOP" and "BYE"

requests.

107.     As a result of Defendant's knowing and/or willful violations of 47

U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B)

and 47 U.S.C. § 227(b)(3)(C).

### SECOND CLAIM FOR RELIEF
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant Alleviate Tax and Defendant REED)**

108.     Plaintiff Ewing repeats and realleges paragraphs 1 through 92 of this

Complaint and incorporates them by reference.

109.     The foregoing acts and omissions of Defendant Alleviate Tax

constitute numerous and multiple knowing and/or willful violations of

California's Invasion of Privacy Act.

110.     As a result of Defendant's knowing and/or willful violations of PC

§632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per

call that was illegally recorded without Plaintiff's knowledge or consent.

111.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such

conduct in the future.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 33

23cv

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble

damages if willful or knowing violations are shown;

c) An order declaring that both Defendant's actions, as set out above, violate the

TCPA;

d) As a result of both Defendant's negligent violations of 47 U.S.C. §227(b)(1)

and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B)

plus treble damages ($1,500 per call and per text), a total of $3,000 per call

under the TCPA;

e) An injunction requiring both Defendants to cease all unsolicited calling activity

that violates the TSR, the FTC Act and the TCPA, and to otherwise protect

the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 34

23cv

g) for exemplary and punitive damages against both Defendants in an amount to be determined with exactness at trial herein; and

h) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial as provided in the seventh Amendment to the United States Constitution.

Dated this 30th day of June, 2023.

/s/ Anton Ewing

_____

Anton A. Ewing, Plaintiff

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA) - 35

23cv

# EXHIBIT 'A'

Alleviate ‹ ht...

**Already a Client?**   📞 **(800) 299-7832**

**Get Started**   📞 **(888) 859-TAX1 (8291)**



## OUR STORY

Millions of Americans are behind on their tax payments by either forgetting to file or not paying their taxes. Falling behind and owing the IRS can be one of the most stressful events in your life. The IRS is relentless in their collection of back taxes, and will not hesitate to use bank levies, wage garnishments, or other tactics to collect on their money. Unlike other creditors, they don't need lawsuits or court permission to do all of this...

Read More
‹ Https://Alleviatetax.Com/Our-Story/ ›

# EXHIBIT 'B'

| | **Secretary of State** **Articles of Organization** Limited Liability Company (LLC) | **LLC-1** |
|---|---|---|

**2 0 1 8 0 5 4 1 0 4 7 9**

**FILED**
Secretary of State
State of California

**FEB 2 3 2018**

This Space For Office Use Only

---

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee** – **$70.00**

**Copy Fees** – First page $1.00; each attachment page $0.50; Certification Fee - $5.00

*Note:* LLCs may have to pay minimum $800 tax to the California Franchise Tax Board each year. For more information, go to *https://www.ftb.ca.gov.*

---

**1.  Limited Liability Company Name** (See Instructions – Must contain an LLC ending such as LLC or L.L.C. "LLC" will be added, if not included.)

ALLEVIATE TAX, LLC

---

**2. Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 4 Park Plaza  Suite 2000 | Irvine | CA | 92614 |

| b. Initial Mailing Address of LLC, if different than item 2a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

---

**3.  Service of Process** (Must provide either Individual **OR** Corporation.)

**INDIVIDUAL** – Complete Items 3a and 3b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | | Suffix |
|---|---|---|---|---|
| | | | | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | | State | Zip Code |
|---|---|---|---|---|
| | | | CA | |

**CORPORATION** – Complete Item 3c.  Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b |
|---|
| Corporation Service Company which will do business in California as CSC-Lawyers Incorporating Service |

---

**4.  Management** (Select **only** one box)

The LLC will be managed by:
☐ One Manager    ☐ More than One Manager    ☑ All LLC Member(s)

---

**5.  Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

---

**6.** The Information contained herein, including in any attachments, is true and correct.

_____
Organizer sign here

Corporation Service Company, Organizer, by Sandra Farneth, Assistant Secretary
_____
Print your name here

LLC-1 (REV 04/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

| Secretary of State | **LLC-12NC** |
|---|---|
| Statement of No Change (Limited Liability Company) | |

20-E59400

# FILED

In the office of the Secretary of State
of the State of California

NOV 13, 2020

**IMPORTANT — Read instructions before completing this form. This form may be used only if a complete Statement of Information has been filed previously and there has been no change.**

**Filing Fee – $20.00**

**Copy Fee –** $1.00;
Certification Fee - $5.00 plus copy fee

*This Space For Office Use Only*

1. **Limited Liability Company Name** (Enter the **exact** name of the LLC as it is recorded with the California Secretary of State. Note: If you registered in California using an alternate name, see instructions.)

ALLEVIATE TAX, LLC

| 2. **12-Digit Secretary of State File Number** | 3. **State, Foreign Country or Place of Organization** (only if formed outside of California) |
|---|---|
| 201805410479 | CALIFORNIA |

4. **No Change Statement** (Do not alter the No Change Statement. If there has been any change, please complete a Statement of Information (Form LLC-12).)

*There has been no change in any of the information contained in the previous complete Statement of Information filed with the California Secretary of State.*

5. The information contained herein is true and correct.

| 11/13/2020 | George Baseluos | Alleviate Tax, LLC | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document, enter the name of a person or company and the mailing address. This information will become public when filed. (SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

LLC-12NC (REV 01/2017)

2017 California Secretary of State
www.sos.ca.gov/business/be

BA20230972954

B1871-5845 06/16/2023 12:58 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20230972954 |
| Date Filed: 6/16/2023 |

| Entity Details | |
| --- | --- |
| Limited Liability Company Name | ALLEVIATE TAX, LLC |
| Entity No. | 201805410479 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of LLC | |
| --- | --- |
| Principal Address | 2600 MICHELSON<br>SUITE 700<br>IRVINE, CA 92612 |

| Mailing Address of LLC | |
| --- | --- |
| Mailing Address | 2600 MICHELSON<br>SUITE 700<br>IRVINE, CA 92612 |
| Attention | |

| Street Address of California Office of LLC | |
| --- | --- |
| Street Address of California Office | 2600 MICHELSON<br>SUITE 700<br>IRVINE, CA 92612 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
| --- | --- |
| Firmus Holdings | 591 26TH STREET<br>MANHATTAN BEACH, CA 90266 |

| Agent for Service of Process | |
| --- | --- |
| Agent Name | Erin Peacock |
| Agent Address | 2600 MICHELSON<br>SUITE 700<br>IRVINE, CA 92612 |

| Type of Business | |
| --- | --- |
| Type of Business | TAX PREPARATION |

| Email Notifications | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
| --- | --- |
| George Baseluos | 2600 MICHELSON<br>SUITE 700<br>IRVINE, CA 92612 |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*George Baseluos*
_____
Signature

*06/16/2023*
_____
Date

B1871-5846  06/16/2023  12:58 PM Received by California Secretary of State

# EXHIBIT 'C'

JUDGE DAVID GUADERRAMA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED

CLERK DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____

| | | |
|---|---|---|
| **ERIK SALAIZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **EP22CV0340** |
| **ALLEVIATE TAX, LLC** a California Limited | § | |
| Liability Company | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant ALLEVIATE TAX, LLC ("Alleviate" "Defendant") is a Limited Liability

Company organized and existing under the laws of California with its principal place of business

at4 Park Plaza, Suite 2050, Irvine, California 92614 and can be served via registered agent

Jonathan Yong at 8 Corporate Park, Suite 300, Irvine, California 92606.

### NATURE OF ACTION

3.      Plaintiff brings this Complaint and Demand for Jury Trial against Defendant to stop

placing illegal robocalls to Plaintiff's personal cell phone and to obtain redress as authorized by

statute.

4.      Defendant offers tax debt relief services to consumers.  As part of marketing their

services, Defendant Alleviate and their agents placed illegal robocalls with a prerecorded voice

# EXHIBIT 'D'

Form **8821**

(Rev. January 2021)

Department of the Treasury
Internal Revenue Service

## Tax Information Authorization

▶ Go to *www.irs.gov/Form8821* for instructions and the latest information.
▶ Don't sign this form unless all applicable lines have been completed.
▶ Don't use Form 8821 to request copies of your tax returns
or to authorize someone to represent you. See instructions.

OMB No. 1545-1165

**For IRS Use Only**

Received by:

Name _____

Telephone _____

Function _____

Date _____

---

**1  Taxpayer information.** Taxpayer must sign and date this form on line 6.

| Taxpayer name and address | Taxpayer identification number(s) | |
|---|---|---|
| Anthony A Baker<br>3077 Claremont dr.<br>San Diego CA 92117 | Daytime telephone number<br>(619)719-9640 | Plan number (if applicable) |

**2  Designee(s).** If you wish to name more than two designees, attach a list to this form. **Check here if a list of additional designees is attached** ▶ ☐

| Name and address | |
|---|---|
| Alleviate Tax<br>2600 Michelson Dr. Ste 700<br>Irvine, CA 92612-6528 | CAF No.  0313-13538R<br>PTIN _____<br>Telephone No.  (800) 299-7832<br>Fax No.  (949) 377-3387 |
| **Check if to be sent copies of notices and communications** ☒ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |
| Name and address | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____ |
| **Check if to be sent copies of notices and communications** ☐ | Check if new: Address ☐   Telephone No. ☐   Fax No. ☐ |

**3  Tax information.** Each designee is authorized to inspect and/or receive confidential tax information for the type of tax, forms, periods, and specific matters you list below. See the line 3 instructions.

☒ By checking here, I authorize access to my IRS records via an Intermediate Service Provider.

| (a)<br>Type of Tax Information (Income, Employment, Payroll, Excise, Estate, Gift, Civil Penalty, Sec. 4980H Payments, etc.) | (b)<br>Tax Form Number<br>(1040, 941, 720, etc.) | (c)<br>Year(s) or Period(s) | (d)<br>Specific Tax Matters |
|---|---|---|---|
| Income | 1040/1040A | 1994 - 2025 | N/A |
| Civil Penalty | TFRP | Q1-Q4, 1994 - 2025 | N/A |
| Separate Assessment | 1040 | 1994 - 2025 | N/A |

**4  Specific use not recorded on the Centralized Authorization File (CAF).** If the tax information authorization is for a specific use not recorded on CAF, check this box. See the instructions. If you check this box, skip line 5 ........................... ▶ ☐

**5  Retention/revocation of prior tax information authorizations.** If the line 4 box is checked, skip this line. If the line 4 box isn't checked, the IRS will automatically revoke all prior tax information authorizations on file unless you check the line 5 box and **attach a copy** of the tax information authorization(s) that you want to retain ................................................. ▶ ☐

To revoke a prior tax information authorization(s) without submitting a new authorization, see the line 5 instructions.

**6  Taxpayer signature.** If signed by a corporate officer, partner, guardian, partnership representative (or designated individual, if applicable), executor, receiver, administrator, trustee, or individual other than the taxpayer, I certify that I have the legal authority to execute this form with respect to the tax matters and tax periods shown on line 3 above.

▶ **IF NOT COMPLETED, SIGNED, AND DATED, THIS TAX INFORMATION AUTHORIZATION WILL BE RETURNED.**

▶ **DON'T SIGN THIS FORM IF IT IS BLANK OR INCOMPLETE.**

6/27/2023

| | |
|---|---|
| Signature | Date |
| Anthony A Baker | |
| Print Name | Title (if applicable) |

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**    Cat. No. 11596P    Form **8821** (Rev. 01-2021)

# EXHIBIT 'E'

 **Gmail**

**Doe John <sddronevideos@gmail.com>**

## Docs Needed - ERC Rebate Follow Up
2 messages

**Mable Baquedan** <mable.baquedan@acceleratetax.com>                      Thu, Jun 29, 2023 at 12:44 PM
To: "Sddronevideos@gmail.com" <Sddronevideos@gmail.com>

Hello,

Thank you for your interest in the Employee Retention Credit! To determine your eligibility, we require the following information:

- **ID**, Current Driver's License or Passport
- **Quarterly Payroll Ledger (2020 and 2021):** Payroll reports must include employees' names, gross wages, and withholdings, broken down by pay period, month, or quarter.
- **Quarterly 941's (2020 and 2021):** IRS document 941s filed quarterly.
- **Quarterly P&L or Quarterly Gross Revenue (2019, 2020, 2021):** Most accounting software can generate this report. Alternatively, provide a breakdown of your gross revenue by month or quarter.
- **PPP Forgiveness for 1st and 2nd round (if applicable):** Provide a copy of the forgiveness application (Form 3508). If you don't have copies, request them from the bank that issued your PPP loan. If you hired someone to handle payroll, share their contact info, and I can request it.

Please reply "ON IT" if you can obtain the above information.
Thank you!

---

**SD Drone Videos** <sddronevideos@gmail.com>                      Thu, Jun 29, 2023 at 1:05 PM
To: Mable Baquedan <mable.baquedan@acceleratetax.com>

on it

send docs

[Quoted text hidden]

# EXHIBIT 'F'



solo.to/henry_all

**Henry Conroy, Tax Consultant**

 2600 Michelson Dr. Ste 700 Irvine, CA 92612

My job is simple: Connect you with a solution to your tax problem. In all of US History, the IRS has never been more aggressive. Contact me

# Phone

## Today

(502) 706-2192
4:15 PM

Suspected Spam
SMART +1 7...
3:49 PM

Greg

# Suspected Spam

Add note

SMART +1 774-267-6208





View on hiya

Show your voicemails? Show

## Today

3:49 PM
Incoming call, 21 mins 58 sec

Add   Share   Block   Report   More